```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-11-10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
FELIPE ORTIZ,

                         Petitioner,

        - against -

DALE ARTUZ, Superintendent of Clinton
Correctional Facility,

                         Respondent,
------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

06 Civ. 6444 (DAB)
ADOPTION OF REPORT
AND RECOMMENDATION

        Petitioner Felipe Ortiz, proceeding pro se, objects to the

June 9, 2008 Report and Recommendation of the Honorable James C.

Francis, recommending that Ortiz' § 2254 Habeas Petition

challenging his second degree murder conviction in New York

Supreme Court for Bronx County be denied.  For the following

reasons, the Court adopts the Report of Magistrate Judge Francis

and denies Petitioner's Petition.


                         I. BACKGROUND


        On June 9, 2008, Magistrate Judge James C. Francis issued a

Report and Recommendation, (the "Report"), recommending that the

Petition of Filipe Ortiz ("Ortiz" or "Petitioner") for a Writ of

Habeas Corpus be denied.  On August 26, 2008 Petitioner filed

timely objections to the Report, arguing that Magistrate Judge

Francis: (1) erred in rejected Petitioner's ineffective

assistance claim arising from appellate counsel's failure to

pursue Petitioner's improper identification argument on appeal; (2) wrongly rejected Petitioner's ineffective assistance claim arising from appellate counsel's failure to brief and argue trial counsel's failure to investigate two potentially exculpatory witnesses and a possible additional suspect; and (3) misapplied the Due Process Clause's sufficiency of the evidence requirement to the evidence presented at trial. The facts in this matter are set forth in detail in Magistrate Judge Francis' June 9, 2008 Report and will not be repeated here.

## II. DISCUSSION

A. Standard of Review

28 U.S.C. § 636(b)(1)(C) requires the Court to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After conducting a de novo review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); see also Local Civil Rule 72.1(d).

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision

that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme

Court of the United States," 28 U.S.C. § 2254(d)(1), or if it

"was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established

federal law "if the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a question of law or if

the state court decides a case differently than [the Supreme

Court] has on a set of materially indistinguishable facts."

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); see also Hoi Man

Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006); Ernst J. v.

Stone, 452 F.3d 186, 193 (2d Cir. 2006).  The phrase, "clearly

established Federal law," limits the law governing a habeas

Petitioner's claims "to the holdings, as opposed to the dicta, of

[the Supreme] Court's decisions as of the time of the relevant

state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006)

(quoting Williams, 529 U.S. at 365); see also Hawkins v.

Costello, 460 F.3d 238, 242 (2d Cir. 2006).

"The 'unreasonable application' standard is independent of

the 'contrary to' standard ... [and] means more than simply an

'erroneous' or 'incorrect' application" of federal law." Henry

3

v.. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U

.S. at 410).  A state court decision is based on an "unreasonable

application" of Supreme Court precedent if it correctly

identifies the governing legal rule, but applies it in an

unreasonable manner to the facts of a particular case.  See

Williams, 529 U.S. at 413.  The inquiry for a federal court is

not whether the state court's application of the governing law

was erroneous or incorrect, but, rather, whether it was

"objectively unreasonable." Id. at 408-10; see also Aparicio v.

Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court

is not empowered to grant the writ just because, in its

independent judgment, it would have decided the federal law

question differently. The state court's application must reflect

some additional increment of incorrectness such that it may be

said to be unreasonable.").

    Moreover, under AEDPA, "a determination of a factual issue

made by a State court shall be presumed to be correct. The

[Petitioner] shall have the burden of rebutting the presumption

of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d

Cir. 2003) ("This presumption of correctness is particularly

important when reviewing the trial court's assessment of witness

credibility.").  A state court's findings "will not be

overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v.Cockrell, 537 U.S. 322, 340 (2003).

B.    Appellate Counsel's Decision not to Challenge the Identification Procedures

A Defendant who challenges his conviction on the grounds of ineffective assistance of counsel must show: (1) that his counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668,688,694 (1984); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  The Strickland two-prong test applies to claims of ineffective assistance of trial or appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Aparicio v. Artuz, 269 F. 3d 78, 95 (2d Cir. 2001).

Petitioner first objects to Magistrate Judge Francis' finding that his appellate counsel was not ineffective in failing to raise on appeal the pretrial identification procedures that led to his identification by the Government's only eyewitness, Ms. Birriel.  Magistrate Judge Francis found

5

that in light of the trial court's hearing on the pretrial

identification issue and its finding that there was no coaching

or other impropriety, as well as the deference due to that

finding by the Appellate Division and Court of Appeals, the

Petitioner could not show any prejudice arising from appellate

counsel's failure to raise the issue on appeal. (Obj., 2-6;

Report, 15-17.)

In his objections, Petitioner contends that even if the

lineup at which Ms. Birriel identified the Plaintiff was proper,

he was subsequently "placed in a bull-pen, and was then viewed

by someone else with a wig, which shortly thereafter caused his

arrest." (Obj. 3.) Petitioner further contends that this

viewing constituted a "showup," which is a normally a

constitutionally suspect means of identifying a Defendant. (Obj.

4-5.) To support these facts, Petitioner cites to page 38 of the

Wade/Huntly Hearing in his state trial proceedings, wherein

Detective Ciuffi testified that after the line-up he brought an

unidentified potential witness to view the Petitioner in his

holding cell. (Nov. 5, 1999 Wade-Huntly Hearing, 38.)

Showups, however are constitutionally suspect only because

the evidence derived from them increases the likelihood of

misidentification. Thus it is only "the admission of testimony

carrying such a likelihood of misidentification which violates a

defendant's right to due process." <u>Wray v. Johnson</u>, 202 F.3d 515, 254 (2d Cir. 2000) (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 198 (1972)) (emphasis added).

Here, there is nothing in the record to suggest, nor does Petitioner even argue, that this unidentified witness ever testified against him at trial, or that any evidence derived from that identification was ever admitted into evidence at trial. The record shows that Ms. Birriel was the only eyewitness to testify against the Petitioner at trial, (<u>see</u> <u>generally</u>, Nov. 23, 1999 Trial Transcript (hereinafter "Trial Tr")), a fact which Petitioner himself acknowledges, (Obj., 8) ("it is important to note that the only witness in this matter is Ms. Nilda Birriel, with no corroborative evidence whatsoever"). Because no testimony or evidence arising from the showup was ever admitted against Petitioner at trial, there could be no resulting violation of his constitutional rights. Accordingly, Petitioner's claim for ineffective assistance of counsel on that basis must be denied.

    C.    Appellate Counsel's Decision not to Raise the Alleged Ineffectiveness of Trial Counsel

Petitioner further objects to Magistrate Judge Francis' denial of his ineffectiveness claim arising from appellate counsel's failure to raise trial counsel's decisions not to

follow-up with witnesses who could have provided exculpatory information and not to pursue a possible alternative suspect. (Obj., 9-14; Report, 17-20.)

Petitioner first argues that trial counsel failed to interview and call his wife at trial, who Petitioner contends would have testified that he was with her at the time the murder took place. (Killian Aff., Ex. 6, 35; Obj., 12-13; Report, 17.) This contention, that counsel was ineffective due to his failure to interview and call Petitioner's wife, assumes that Petitioner's wife would indeed have testified that he was with her at the time of the murder. Such facts are squarely outside the record presented to this Court.

In New York, the proper means to obtain review of an ineffective assistance claim based upon facts outside the record is a motion to vacate pursuant to New York Criminal Procedure Law § 440.10. In contrast, a claim for ineffective assistance "may be raised on direct appeal only if all the factual information necessary to determine the claim appears in the trial record." Polanco v. Ercole, 2007 WL 2192054, *7 (S.D.N.Y. Jul. 31, 2007) (citing Davis v Herbert, 2001 WL 1464634, *3 (S.D.N.Y. Nov. 19, 2001)). Where such a claim "involves facts outside the record, particularly as to the information available to counsel and the basis for his . . . strategy" it must first

8

be raised by a Section 440.10 motion. Id. (quoting Polanco v. People. 786 N.T.S.2d 437, 438 (1st Dep't 2004)).

Because Petitioner has not raised this claim in a Section 440.10 motion, but rather on both direct appeal and in his Motion for a Writ of Error Coram Nobis, before the Appellate Division, this court "cannot entertain [Defendant's] complaint about [his attorney], because [Defendant] has not exhausted the remedies available in the courts of the State." Id. (quoting 28 U.S.C. § 2254(b)(1)(A).)

While the Supreme Court has held that a district court has discretion to stay a petition containing unexhausted claims to allow the petitioner to first present those claims to the state court and then to return to federal court, it has also cautioned that such stays should be utilized only in "limited circumstances" such as where there is "good cause for the petitioner's failure to exhaust his claims first in state court," Rhines v. Weber, 544 U.S. 269, 277 (2005). Here, Petitioner has not shown good cause for his failure to first bring a Section 440.10 motion in state court relating to his ineffective assistance claims based on facts outside the trial record. Accordingly, all such claims are dismissed.[1]

_____

[1] In addition to his ineffective assistance claim based on counsel's failure to have his wife testify, Petitioner also

9

Petitioner also contends that his counsel failed to investigate and call another witness named Winston Reed, who allegedly observed an individual named Lawrence Roman shooting a gun in the air on a bicycle, in the same neighborhood, two days prior to the murder. (Trial Tr., 198, 312.) This alleged observation of Roman by Winston Reed was potentially relevant because Roman was the individual whose photo Ms. Birriel picked out of the photo array. (Trial Tr., 329.)

Petitioner's counsel made unsuccessful efforts, with the help of the prosecution, to contact Mr. Reed.  (Trial Tr., 194.) He also convinced the prosecution to agree to and read a stipulation of facts to the jury, stating that Detective Ciuffi had interviewed Winston Reed and that Reed had told him about seeing Lawrence Roman shooting a gun in the air, in the same

---

contends that counsel failed to raise the issue that his photo must have been included in the photo array presented to Ms. Birriel because he had been arrested at the same precinct, "long before . . . the photo array, which means that Petitioner's photo and pedigree was on file on the date of the array." (Obj., 10-11.)  Yet again there is no evidence on the record that Plaintiff was arrested in the precinct long before Ms. Birriel was shown the photo array, or that the policies and practices of that precinct or the New York Police Department generally would have caused his photo and pedigree to be kept on file and presented to Ms. Birriel in the photo array.  Accordingly, this claim must also first be brought under a Section 440.10 motion and is dismissed for failure to exhaust state remedies under § 2254(b)(1)(A).

10

neighborhood, two days prior to the Murder.  (Trial Tr., 312.)

Finally, in his closing arguments, Petitioner's counsel used

those facts, in conjunction with Ms. Birriel's photo

identification of Mr. Roman, to argue that Mr. Roman was the

more likely shooter.  (Trial Tr., 331-33, 338.)  Accordingly, in

light of these efforts, the Court cannot find that the

representation of Petitioner's counsel fell below an objective

level of reasonableness.

    D.    Insufficiency of the Evidence

Petitioner further objects to Magistrate Judge Francis'

finding that a rational jury could have (1) credited Ms.

Birriel's explanation for why shy initially identified the wrong

person and changed factual details in her story, (2) discounted

any inconsistencies in her description of the shooter in light

of the fact that she had seen him in the neighborhood on five

prior occasions, and (3) believed she was truthful in her

testimony despite being held in police custody for seven days

leading up to the trial.  (Obj., 7-9; Report, 8-12.)

Petitioners challenging the sufficiency of the evidence on

habeas review carry a "very heavy burden."  Knapp v. Leonardo,

46 F.3d 170, 178 (2d Cir. 1995) (internal quotation marks and

citations omitted).  "The relevant question is whether, after

11

viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt."

Quartararo v. Hanslmaier, 186 F.3d 91,97 (2d Cir. 1999) (quoting

Herrera v. Collins, 506 U.S. 390, 401 (1993)).  The Court must

"decide[] whether the record is 'so totally devoid of

evidentiary support that a due process issue is raised."'

Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (quoting Mapp

v. Warden, New York State Correctional Institute for Women, 531

F.2d 1167, 1173 n.8 (2d Cir. 1976)).  This standard affords

"full play to the responsibility of the trier of fact fairly to

resolve conflicts in the testimony, to weigh the evidence, and

to draw reasonable inferences from basic facts to ultimate

facts."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Here, Ms. Birriel chose an individual other than the

Petitioner out of a police photo array, stating that he was a 75

percent resemblance and "almost like a twin" of the shooter,

except with darker skin. (Trial Tr., 31-33, 73.)  Ms. Birriel

also initially identified a different individual during the

lineup, (Trial Tr., 34-35), and gave conflicting statements as

to the man or men who she stated had assaulted and intimidated

her, (Trial Tr., 75, 84.)

However, at trial Ms. Birriel testified that she made these

12

false statements and identifications because prior to the lineup
a hispanic man had gotten out of his car and approached Ms.
Birriel, burned her face with a cigarette car lighter, and told
her "we got your daughter, we got you.  Keep your mouth shut
because Goldie wouldn't be happy." (Trial Tr., 39-40, 75-76.)
Ms. Birriel further testified that she believed the man's
reference to her daughter related to an incident during which
her daughter had recently been "smacked" while she was in the
park. (Trial Tr., 40, 76-77.)  Ms. Birriel's description of
being burned was also corroborated by a contemporaneous
photograph showing the burn, which was admitted into evidence.
(Trial Tr., 37-38.)

Ms. Birriel also testified that she originally told the
police officers that she was threatened and burned by a "car
full of black men" rather than a single hispanic man because "at
that point [she] did not want to get any further involved . . .
[and] was giving false descriptions of everybody and everything
because [she] was scared of death . . . " (Trial Tr., 75, 83.)

Having reviewed the testimony presented at trial de novo,
the Court agrees with Magistrate Judge Francis and finds that
Ms. Birriel's testimony that she was physically assaulted and
threatened with further violence if she spoke about the murder
was neither so incredible nor so unbelievable that no rational

13

jury could credit its truthfulness.  Further, a jury that

credited Ms. Birriel's testimony regarding the assault and

threats of violence could also rationally believe her

explanation for her initial identification of a different man in

the lineup and her misstatement about the person who had

assaulted and threatened her.  Further, especially in light of

the fact that Ms. Birriel hedged in her selection of a photo

from the photo array by making a contemporaneous statement that

the photo she identified was only a 75% resemblance, but with

darker skin, a rational jury could have declined to place

significant weight on the photo misidentification.

Finally, and especially in light of the threats that the

jury believed had been levied against her, the jury could have

found that although Ms. Birriel testified involuntarily, (Trial

Tr., 21, 83), it was because she was afraid for her and her

daughter's safety, and that she nevertheless testified

accurately and truthfully.

Accordingly, viewing the evidence in the light most

favorable to the prosecution, the Court finds that a rational

trier of fact could have found Petitioner guilty beyond a

reasonable doubt, based on the evidence presented at trial, and

therefore denies Petitioner's due process claim based upon the

insufficiency of the evidence.

### III. CONCLUSION

Having reviewed the remainder of the Report and finding no clear error on the record, and having conducted an independent de novo review of the specifically objected-to portions of the Report, it is ORDERED AND ADJUDGED as follows:

1.   The Report and Recommendation of United States Magistrate Judge Francis dated June 9, 2008, be and the same hereby is APPROVED, ADOPTED, and RATIFIED by the Court;

2.   Petitioner's § 2254 Habeas Petition is DENIED;

3.   The Clerk of Court is directed to CLOSE the Docket in this Case.

SO ORDERED

Dated:    New York, New York
          August 11, 2010

                              _Deborah A. Batts_
                              DEBORAH A. BATTS
                              United States District Judge

15